**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA INDIANS** 2605 N. West Bay Shore Drive Peshawbestown, MI 49682 | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| **UNITED STATES OF AMERICA;** and | ) ) ) ) | |
| **KATHLEEN SEBELIUS,** in her official capacity as Secretary, U.S. Department of Health & Human Services 200 Independence Avenue, SW Washington, DC 20201 | ) ) ) ) ) ) ) ) ) | Civil Case No. 1:13-cv-01371 |
| and | ) ) | |
| **YVETTE ROUBIDEAUX,** in her official capacity as Acting Director, Indian Health Service 801 Thompson Avenue Rockville, MD 20852 | ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | | |

Served:     The Honorable Eric H. Holder, Jr.
            Attorney General of the United States
            U.S. Department of Justice
            950 Pennsylvania Avenue, NW
            Washington, DC 20530-0001

            The Honorable Ronald C. Machen, Jr.
            United States Attorney for the District of Columbia
            555 Fourth Street, NW
            Washington, DC 20530

**COMPLAINT**

The Plaintiff, for its cause of action against the Defendants named above, alleges as follows:

**INTRODUCTION AND SUMMARY**

1.      This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the Department of Health and Human Services ("HHS"). Plaintiff, the Grand Traverse Band of Ottawa and Chippewa Indians ("the Tribe"), seeks money damages under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.* ("CDA"), based on the Secretary's repeated violations of the Tribe's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for agreements entered under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, as amended, 25 U.S.C. § 450 *et seq.*

2.      Defendants breached the Tribe's ISDEAA agreements by failing to pay the full CSC owed to the Tribe under the ISDEAA and the Tribe's ISDEAA agreements and annual funding agreements ("AFAs") for fiscal years 2006 through and including 2010.

3.      Defendants paid only a portion of the CSC owed under the Tribe's ISDEAA agreements, due to their misapplication of federal contracting and appropriations law.  In the appropriations acts each year, Congress imposed "caps" on aggregate CSC spending, which Defendants believed allowed them to underfund the Tribe's ISDEAA agreements.  This resulted in CSC "shortfalls," which the IHS calculated for fiscal years 2006 through and including 2010 and reported to Congress.

4.      The Supreme Court found Defendants' practice unlawful, holding that the IHS is responsible for fully funding ISDEAA agreements—including all of the required CSC—without regard to congressionally instituted caps on CSC funding as a whole.  *Salazar v. Ramah Navajo*

*Chapter*, 567 U.S. ___, 132 S. Ct. 2181 (2012).   As long as there are sufficient appropriations to cover an individual ISDEAA agreement's costs—even if there is not enough to fully fund all ISDEAA agreements—the federal government's obligation to fully pay each individual ISDEAA agreement remains.   In the Court's words -- "[t]he agency's allocation choices do not affect the Government's liability in the event of an underpayment."   *Ramah*, 132 S. Ct. at 2192, quoting *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 641 (2005).

5.      The Tribe's claims are indistinguishable from the claims in *Ramah*.   The IHS received sufficient funds in each year at issue to fully pay the Tribe's CSC, although Congress limited the aggregate amount of funding for all CSC at the agency.   The shortfall in CSC owed to the Tribe was a result of the agency's allocation choices, but the federal government remains liable for payment of the full amount, plus additional damages arising from the failure to pay the full amount.

## JURISDICTION AND VENUE

6.      This controversy arises under agreements between the United States and the Tribe for operation of Indian health programs carried out pursuant to ISDEAA agreements and funding agreements.   This Court has subject matter jurisdiction under the CDA, 41 U.S.C. § 7104(b), and the ISDEAA.   See 25 U.S.C. § 450m-1(a) (providing original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA agreements).

7.      On September 26, 2012, the Tribe requested an IHS contracting officer's decision on claims for underpaid CSC for fiscal years 2006 through and including 2010.   In letters dated July 23, 2013, the IHS contracting officer denied these claims.   Thus, the Tribe has exhausted its administrative remedies for its claims from fiscal years 2006 through and including 2010, and filed

this action within twelve months of receiving the decisions, as required by the CDA.   41 U.S.C. § 7104(b).

8.      This Court has jurisdiction to review the IHS's decisions denying the Tribe's claims for fiscal years 2006 through and including 2010 under the CDA and Section 110 of the ISDEAA. 41 U.S.C. § 7104(b); 25 U.S.C. § 450m-1(a); 25 U.S.C. § 450m-1(d).

9.      Venue is proper because Defendant Kathleen Sebelius in her official capacity as Secretary of HHS is located in the District of Columbia.

## PARTIES

10.      Plaintiff is a federally recognized Indian Tribe, and as part of the governmental services it provides to its members, administers a tribal health clinic system.   The Tribe's health clinic system provides a wide range of health care services, including medical services, dental support services, community health services, chemical dependency treatment programs, and mental health counseling.   Pursuant to a self-governance compact and funding agreement with IHS, the Tribe has contracted with the IHS under the ISDEAA to carry out these functions.

11.      Defendant United States is a party to every ISDEAA funding agreement, including the Tribe's agreements for each of fiscal years 2006, 2007, 2008, 2009, and 2010.   Agreements between the Grand Traverse Band of Ottawa and Chippewa Indians and the Secretary of Health and Human Services Indian Health Service (Compact of Self-Governance executed June 30, 1993; Funding Agreements executed for fiscal years 2006, 2007, 2008, 2009, and 2010).

12.      Defendant Kathleen Sebelius is the Secretary of Health and Human Services, and is charged by law with the responsibility for implementing the ISDEAA, and other health laws benefiting Indians, on behalf of the United States.   25 U.S.C. § 450f(a)(l); 25 U.S.C. § 450b(i); 42 U.S.C. § 2001.   Defendant Sebelius is sued in her official capacity.

13.     Defendant Yvette Roubideaux is the Acting Director of the IHS, the primary agency that carries out HHS's responsibility for implementing the ISDEAA, and other health laws benefiting Indians, on behalf of the United States.   See 25 U.S.C. § 1661.   Defendant Roubideaux is sued in her official capacity.

## STATEMENT OF FACTS

### The ISDEAA

14.     During fiscal years 2006 through and including 2010, the Tribe provided health care services to eligible Indians and other eligible beneficiaries pursuant to agreements entered into with the Secretary of the HHS and the IHS under Title V of the ISDEAA, 25 U.S.C. § 450 *et seq*.

15.     The ISDEAA authorizes the Tribe, other tribal organizations, and tribes to assume responsibility to provide programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide.   In return, the Secretary must provide the Tribe two types of funding under section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 450j-1(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. § 450j-1(a)(2) and (3).[1]

---

[1]   Section 106(a)(2) of the ISDEAA mandates as follows:

> (2)     There shall be added [to the 106(a)(1) amount] contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which—
> > (A)     normally are not carried on by the respective Secretary in his direct operation of the program; or
> > (B)     are provided by the Secretary in support of the contracted program from resources other than those under contract.

25 U.S.C. §450j-1(a)(2).

5

16.     There are three types of CSC: (1) start-up costs, which are one-time costs to plan, prepare for and assume operation of a new or expanded PFSA, see 25 U.S.C. § 450j-1 (a)(5) & (6); (2) indirect costs, costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 450j-1(a)(2); and (3) direct CSC ("DCSC"), expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 450j-1(a)(3)(A).

17.     The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC.  25 U.S.C. § 450j-1(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses."). As noted above, one component of the required CSC under section 106(a) is indirect cost funding, which covers administrative and overhead costs, allowing all program funds to be used to provide health care PFSAs for tribal members and other beneficiaries.

18.     For the Tribe, the "full amount" of indirect costs was (and is) determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base.  The Tribe's indirect cost rate, direct cost base, resulting indirect cost requirement, and any shortfall in funding were memorialized in the CSC "shortfall reports" IHS prepared for, and delivered to, the U.S. Congress each year in accordance with the ISDEAA.  *See* 25 U.S.C. § 450j-1(c).

<u>The CSC Shortfalls and the *Ramah* Case</u>

19.     Despite the ISDEAA's requirements that the Secretary shall pay the full amount of CSC, the IHS has not done so.   Since at least fiscal year 1993, IHS has underpaid the vast majority

of ISDEAA contractors, as documented in the agency's annual CSC "shortfall reports" to Congress.   IHS prepares the shortfall reports in compliance with ISDEAA section 106(c), which requires that the agency submit to Congress an annual report on the implementation of the ISDEAA, including:

> (1)     an accounting of the total amounts of funds provided for each program and the budget activity for direct program costs and contract support costs of tribal organizations under self-determination;
>
> (2)     an accounting of any deficiency in funds needed to provide required contract support costs to all contractors for the fiscal year for which the report is being submitted....
>
> 25 U.S.C. § 450j-1(c).

20.     Each IHS Area Office, including the Bemidji Area (which administratively serves the Tribe), prepares a shortfall report that shows how much each tribe and tribal organization in the Area was paid in CSC for the fiscal year, how much IHS would have paid had Congress appropriated sufficient CSC funding to pay every ISDEAA contractor in full, and the resulting shortfall.   The reports reflect the data in the contracts and compacts, funding agreements, and indirect cost rate agreements of tribal contractors.

21.     Though the form of the shortfall reports has varied somewhat over the years, the essential information in the reports used to calculate the shortfalls has remained the same for each given year: the total CSC requirement minus the actual CSC paid by the IHS equals the CSC shortfall, which is reported to Congress.

22.     Prior to fiscal year 1998, Congress imposed no statutory restriction on availability of CSC, but IHS limited its payment to the amounts recommended in congressional committee reports.   In 2005, the U.S. Supreme Court held this practice unlawful, ruling that the appropriations available to pay tribes the full CSC due under section 106(a) and their contracts included the IHS's entire unrestricted lump-sum appropriation.   *Cherokee Nation*, 543 U.S. at

642-43 (2005).   The Court held that IHS should have reprogrammed funds to pay the Cherokee Nation the full CSC due under its contracts.

23.      Despite the *Cherokee* ruling, Defendants continued their practice of paying less than full CSC to ISDEAA contractors.   Defendants justified the systematic underpayment of CSC by pointing to the CSC spending "caps" Congress has placed in the appropriations acts beginning in fiscal year 1998.   *See, e.g.*, Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681, 2681-279 (1998) ("not to exceed $203,781,000 shall be for payments to tribes and tribal organizations for contract or grant support costs associated with [ISDEAA] contracts").

24.      In 2012, the U.S. Supreme Court considered the Government's responsibility to fully fund CSC during years when Congress placed a cap on the amount of funding available for CSC.   Echoing its reasoning in *Cherokee*, the Court held that—even if Congress appropriates insufficient funds to cover the aggregate amount due to every contractor, but enough to pay any individual contractor's CSC—the Government is obligated to pay each contractor's CSC in full. *Ramah*, 132 S. Ct. at 2186. [2]

25.      The Court explicitly rejected arguments that the government is not liable for full CSC because Congress did not appropriate sufficient funding for all CSC, and that the ISDEAA states that the Secretary "is not required to reduce funding for programs, projects, or activities serving a tribe to make funds available to another tribe."   *Ramah*, 132 S. Ct. at 2192, quoting 25 U.S.C. § 450j-1(b).   The Court found this idea was "inconsistent with

---

[2] "Once Congress has appropriated sufficient legally unrestricted funds to pay the contracts at issue, the Government normally cannot back out of a promise to pay on grounds of 'insufficient appropriations,' even if the contract uses language such as 'subject to the availability of appropriations,' and even if an agency's total lump-sum appropriation is insufficient to pay *all* the contracts the agency has made." *Ramah*, 132 S. Ct. at 2190 (internal quotations omitted) (emphasis in the original).

ordinary principles of Government contracting law," and that the "agency's allocation choices do not affect the Government's liability in the event of an underpayment." *Id.*[3]

26.     The Tribe was one of the tribal contractors underpaid in fiscal years 2006 through and including 2010 as a result of IHS's allocation choices.   According to the agency's own CSC shortfall reports, the Tribe suffered significant CSC underpayments in these years.   The shortfalls documented in the reports for those years are summarized in the following table:

**Table 1. Shortfall Report Summary**

| Year | Total Requirement ($) | Total Paid ($) | Shortfall ($) |
|---|---|---|---|
| 2006 | 620,851 | 518,703 | 102,148 |
| 2007 | 540,308 | 523,051 | 17,257 |
| 2008 | 548,107 | 506,921 | 41,186 |
| 2009 | 570,417 | 502,170 | 68,247 |
| 2010 | 582,361 | 541,039 | 41,322 |
| TOTAL | | | **270,160** |

**CAUSE OF ACTION - Breach of Contract**

27.     All prior allegations are adopted by reference.

28.     The Tribe's ISDEAA agreements incorporate the statutory duty to fully fund CSC. 25 U.S.C. § 450j-1(a) & (g); *see also, e.g.*, fiscal years 2006-2009 Multi-Year Funding Agreement between   the Grand Traverse Band of Ottawa and Chippewa Indians and the IHS.   The Supreme Court affirmed this duty in *Ramah*, which other courts have followed.   Despite this statutory and contractual duty, during the years in question, the IHS failed to provide the full funding due under its ISDEAA agreements with the Tribe.

---

[3] The *Ramah* decision concerned CSC from the Bureau of Indian Affairs, but after that decision, the Court vacated a Federal Circuit case involving the IHS that had reached a contrary conclusion.  On remand, the Federal Circuit followed *Ramah*, noting the IHS appropriations were limited by identical language as the BIA appropriations in *Ramah*, and holding the Secretary was obligated to pay all of the tribal contractor's CSC.  *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 2012 WL 3599217, No. 2010-1013 (Fed. Cir., Aug 22, 2012) *on remand from Arctic Slope Native Ass'n., Ltd. v. Sebelius*, 133 S. Ct. 22 (2012), *vacating* 629 F.3d 1296 (Fed. Cir. 2010).

29.     Instead, the IHS paid significantly less than its full CSC requirement in fiscal years 2006 through and including 2010, as acknowledged in IHS's own shortfall reports.   In doing so, the IHS violated the ISDEAA's requirement of full payment from available appropriations without regard to total appropriations or any congressionally imposed aggregate caps, as affirmed by the Supreme Court in *Ramah*, and breached its agreements with the Tribe, which incorporate the full-funding requirement of section 106(a).

<u>Claim 1: Fiscal Year 2006</u>

30.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for fiscal year 2006 was $620,851, yet the IHS paid only $518,703.   Therefore, the Tribe asserts a claim under the ISDEAA and its ISDEAA agreement in the amount of $102,148.

<u>Claim 2: Fiscal Year 2007</u>

31.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for fiscal year 2007 was $540,308, yet the IHS paid only $523,051.   Therefore, the Tribe asserts a claim under the ISDEAA and its ISDEAA agreement in the amount of $17,257.

<u>Claim 3: Fiscal Year 2008</u>

32.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for fiscal year 2008 was $548,107, yet the IHS paid only $506,921.   Therefore, the Tribe asserts a claim under the ISDEAA and its ISDEAA agreement in the amount of $41,186.

<u>Claim 4: Fiscal Year 2009</u>

33.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for fiscal year 2009 was $570,417, yet the IHS paid only $502,170.   Therefore, the Tribe asserts a claim under the ISDEAA and its ISDEAA agreement in the amount of $68,247.

<u>Claim 5: Fiscal Year 2010</u>

34.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for fiscal year 2010 was $582,361, yet the IHS paid only $541,039.  Therefore, the Tribe asserts a claim under the ISDEAA and its ISDEAA agreement in the amount of $41,322.

## PRAYER FOR RELIEF

35.     The Plaintiff therefore requests that this Court:

     A.     Award the Tribe $270,160 in damages, as detailed in paragraphs 30-34 above;

     B.     Award such other damages as may be proven in this action;

     C.     Order the payment of interest on these claims pursuant to the CDA, 41 U.S.C. § 7109, and the Prompt Payment Act, Chapter 39 of Title 31, United States Code;

     D.     Award the Tribe its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 450m-1(c), and other applicable law; and

     E.     Grant the Tribe such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Philip Baker-Shenk (DC Bar No. 386662)
Holland & Knight, LLP
800 17th St. NW, Suite 1100
Washington, DC 20006
202-457-7031
202-955-5564 (Fax)
philip.baker-shenk@hklaw.com

DATED: September 10, 2013.

#25624225_v3